FLOMERFELT v. NEWWITTER et al.

(Circuit Court, S. D. New York.   July 8, 1898.)

1. DESIGN PATENTS—ANTICIPATION.
   An inventor may take out a patent for mechanical construction and a separate patent for the design of the same article, and hence the mechanical patent is immaterial on the question of anticipation of the design patent.

2. SAME—PRIOR USE—TESTIMONY FROM RECOLLECTION.
   Testimony of a witness as to the date when an alleged anticipating article came into his possession, merely from recollection, unsupported by any other proof, and not fixed in his mind by any other occurrence which can be itself located in time, is insufficient to prove prior use.

3. SAME.
   Proof that six pairs of cuff button links, like those covered by a patent, were made by another prior to the date of the alleged invention, is sufficient to invalidate the patent, though they never went into general use.

4. SAME—DESIGN FOR CUFF BUTTONS.
   The Flomerfelt design patent, No. 24,091, for a cuff button, is void because of prior use.

This was a suit in equity by James A. Flomerfelt against Morris J. Newwitter and another for alleged infringement of a patent for a design for cuff buttons.

Edwin H. Brown, for complainant.
R. B. McMaster, for defendants.

LACOMBE, Circuit Judge.    Design patent, No. 24,091, for a design for a cuff button, was issued to complainant, March 12, 1895. The specification describes the design as "consisting essentially in the shank portion, 2, of the cuff button, having double inclined or forwardly projecting or converging front or outer edge, 1, as combined with or viewed in connection with its angularly disposed heads, 3, 4, at opposite sides of the shank, said heads being inclined towards each other from the rear towards the front of the button, whereby the general planes of the heads tend or lean towards the planes of the two adjacent forwardly converging, angularly disposed parts of the front edge, 1, of the button shank, all as shown more clearly in the figure."

Fig. 1.          Fig. 2.

The precise shape and style of ornamentation of the heads are not material. It is the shape of the shank or link, and the disposition of the heads relatively thereto, that constitute the design. Defendants' cuff button is plainly an infringement, and the only questions to be discussed are anticipation and prior use.

Anticipation is not shown by the prior patents in evidence. The design appears in patent No. 518,595, April 24, 1894, issued to the same patentee (complainant), for the mechanical contrivance of a rigid shank, so shaped and connected with the heads as to "clamp the cuff against the sides [of the shank], and maintain the ends of the cuff separated and in a rigid position." This patent, however, is immaterial, as complainant had the right to take out a patent for mechanical construction and a separate patent for the design of his buttons.

The cuff button shown in English patent No. 12,394, of 1888, to Sommer, certainly would not appear to be the same in design as complainant's to an observer not an expert, giving such attention to details as the ordinary purchaser usually gives, which is the test with design patents. The button of the Ireson English patent, No. 1,171, of 1889, is still further removed, since it has no single rigid shank, but two short shanks connected by a ring link, and capable of assuming different positions relative to the heads. In the Williams United States patent, No. 277,095, of May 8, 1889, the shank is only slightly convex, not presenting the appearance of the W of the patent in suit. In the Smitten United States patent, No. 400,132, of March 26, 1889, the heads are not angularly disposed. The button of the Peck United States patent, No. 470,411, of March 8, 1892, is much like the Williams button. The Watson United States patent, No. 538,395, is not prior. Application was filed January 31, 1895, and complainant's application October 30, 1894.

A button was produced by the witness Pappie which is similar in all respects to complainant's; but, although he says he thinks he came into possession of it in 1892, his recollection as to the date, unsupported by any other proof, and not fixed in his mind by any other occurrence, which can be itself located in time, is insufficient to prove prior use.

Most of the testimony is directed to an exhibit known as the "1879 Link" or the "Ox Bow." The shank of this exhibit is a little flatter than complainant's, and the sharp projection at 1 in the figure is rounded off. Nevertheless, it resembles the button of the patent so closely as to be an anticipation, if prior in time. It is unnecessary to discuss the details of the testimony. Suffice it to say that it satisfies the court that, at a date some years before the application for this patent, at least six pairs like this "1879 Link" were made in the factory of the witness Devereaux. Entries in books and changes in business arrangements of sufficient importance to fix dates in the minds of the principal witnesses enable them to fix, relatively to such entries and transactions, the date of the manufacture of these links. It is true that they never went into general use, not pleasing the taste of the trade, but they are not for that reason to be rejected as an abandoned experiment. The design was completed, and was used at

least for a short time by two or three of the witnesses. That seems to be sufficient to constitute a prior use. Defendants may take a decree dismissing the bill.